UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES SCHOOLS OF GOLF, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.1:05-cv-0313-DFH-TAB |
| | ) | |
| BILTMORE GOLF, INC. d/b/a NATIONAL GOLF SCHOOLS and BILTMORE GOLF, INC. d/b/a NATIONAL GOLF SCHOOL, PATRICK LIVINGSTON, Individually and in his capacity as Chief Executive Officer, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON DEFENDANTS' MOTION TO DISMISS

Plaintiff United States Schools of Golf, Inc. ("USSOG"), an Indiana corporation, has filed suit against defendants Patrick Livingston and two corporations of which he is a majority owner, Biltmore Golf, Inc. and National Golf Schools, Inc. Both defendant corporations are Florida corporations and have their principal offices in Florida. Livingston is a professional golfer and is also a Florida resident and citizen.

USSOG alleges that it had a contractual relationship with the corporate defendants for several years during which USSOG referred customers to defendants' golf schools at various resorts. USSOG would collect money from the

customers for the full price of the schools and would forward money on to defendants, keeping a percentage as a fee for USSOG's services. USSOG alleges that defendants damaged its nationwide reputation and customer goodwill by failing to provide promised services to the referred customers and by publishing misleading information about defendants' services.

All defendants have moved to dismiss for lack of personal jurisdiction and improper venue. Defendant Livingston has also moved to dismiss USSOG's complaint for failure to state a claim upon which relief could be granted against him as an individual. As explained below, defendants' motion to dismiss is denied on the issues of personal jurisdiction and improper venue, as well as on the claims against defendant Livingston, except that dismissal is granted on the breach of contract claim against Livingston as an individual.

*Facts and Allegations*

The factual record before the court is sparse. It consists of USSOG's amended complaint, an affidavit from USSOG's Mitchell Crum, some deposition testimony from Livingston, several e-mails, and some discovery responses. Defendants have not submitted evidence to support any part of their motion. Accordingly, the factual statements in this entry take plaintiff's allegations and evidence at face value.

Plaintiff USSOG is an Indiana corporation that provides golf instruction and related products and services. Its principal place of business is in Richmond, Indiana. USSOG alleges that it advertises and provides services to customers across the United States. Defendant Biltmore Golf, Inc. is a Florida corporation with its principal place of business in Belleair, Florida. National Golf Schools, Inc. is also a Florida corporation with the same principal office. Both corporations do business under the name "National Golf Schools," which is the term the court uses to describe both corporations collectively here. Livingston is an owner, officer, and instructor for both corporations. He resides in Clermont, Florida.

National Golf Schools operates golf instruction programs in several states, but not Indiana. In the last five years, it has taught about five to ten Indiana residents, but the record does not show how many of those students were referred by USSOG. National Golf Schools has not advertised in a nationally circulating publication in several years. However, it advertises to golfers throughout the country via its website, www.nationalgolfschools.com. National Golf Schools hires an outside firm to manage its web marketing. A client testimonial by "Sam S." from Bloomington, Indiana appears on its website.

Beginning no later than 2002, USSOG has had an ongoing business relationship with National Golf Schools whereby USSOG refers golfers to National Golf Schools for golf instruction and related services. In exchange, USSOG keeps a percentage of the fees that it collects from customers and sends to National Golf

Schools.   USSOG alleges that the parties have established a contractual relationship. Although the record is not as clear as one might hope, it appears that USSOG referred some fifteen to twenty customers to National Golf Schools over the last two years of the relationship.  See Livingston Dep. at 16.[1]

Through their business relationship, USSOG and National Golf Schools were in contact about eight to eleven times per year.  Livingston acknowledges that he personally has made telephone calls and has sent e-mails and faxes to USSOG concerning their business relationship.  He also admits that National Golf Schools has made telephone calls and has sent e-mails and faxes to USSOG in Indiana.

Livingston has taught some USSOG customers on behalf of National Golf Schools, but he has not taught any customers in Indiana.  About fifteen years ago, he worked as head golf professional of a country club in Indiana.  At that time, he lived in Kentucky.  He has traveled to Indiana only a handful of times in the last ten years, most recently two to four years ago to play golf recreationally.

In this suit, USSOG alleges that defendants accepted referral customer reservations and payment for golf schools and services but failed to provide those services.   USSOG also alleges that defendants made false and misleading

---

[1]During Livingston's deposition, the questioner asked if there had been between 15 and 20 such customers, and Livingston responded:  "It could be a little less than that.  I don't have that right in front of me."

representations on their website, implying that their services and their golf professionals were more highly credentialed than in fact they are.

USSOG alleges that defendants' conduct has caused dissatisfaction among some of its referred customers and required it to refund their payments. USSOG also alleges that defendants' conduct has damaged USSOG's reputation and customer goodwill.

USSOG brings claims against defendants under the federal Lanham Act, 15 U.S.C. §§ 1116, 1117, 1125(a)(1), and Indiana common law. The court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1367.

*Discussion*

I. *Personal Jurisdiction*

All defendants have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants point out that the complaint did not allege a basis for personal jurisdiction, but a complaint "need not include facts alleging personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003), quoting *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). Once a defendant has raised the issue by moving to dismiss, though, the plaintiff

must come forward with a basis for jurisdiction.  Where a defendant fails to submit evidence supporting its motion, the court need not hold an evidentiary hearing, and the court must credit plaintiff's allegations and affidavits.  *Id.* at 783; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

A federal district court exercising diversity jurisdiction has personal jurisdiction over a non-resident defendant only if a court of the state in which it sits would have such jurisdiction.  *Purdue Research*, 338 F.3d at 779.  The same standard applies to claims arising under federal statutes that do not authorize nationwide service of process.  *Search Force, Inc. v. Dataforce Intern., Inc.*, 112 F. Supp. 2d 771, 774 (S.D. Ind. 2000) (noting that Lanham Act does not authorize nationwide service of process under 15 U.S.C. § 1121(a)).

Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute.  The current version of the Rule lists eight enumerated bases for jurisdiction and now includes the following language:  "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Thus, a plaintiff must show only that long-arm jurisdiction is constitutional.  The parties have not argued that there is any difference between the federal and state constitutional standards, so the court applies federal due

process standards.  See, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-73 (1985).[2]

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).  Personal jurisdiction under Indiana Trial Rule 4.4(A) may be either general or specific.  See *Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002).  General jurisdiction makes a non-resident defendant amenable to suit within a particular forum, regardless of the subject matter of the suit, based on the defendant's continuous and systematic contacts with the forum.  See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).  Specific jurisdiction makes a non-resident defendant amenable only to suits arising out of or related to the defendant's contacts with

---

[2]A panel of the Indiana Court of Appeals has suggested that Rule 4.4(A) still requires courts to determine first whether the defendant's actions satisfy one of the enumerated acts and only then to conduct the due process inquiry.  See *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 969 n.2 (Ind. App. 2004).  This court disagrees with that view, and believes that the addition of the constitutional limits language in 2003 requires courts to perform only the constitutional analysis when jurisdiction is contested.  See *Engineered Medical Systems, Inc. v. Despotis*, No. 1:05-cv-0170, 2005 WL 2922448, n.2 (S.D. Ind. Nov. 4, 2005) (explaining this court's view); see also *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2005 WL 106936, *12-13 (S.D.N.Y. Jan. 18, 2005) (disagreeing with *Pozzo Truck* and predicting that Indiana Supreme Court would follow the plain language of Rule 4.4(A)); *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 & n.3 (N.D. Ind. 2004) (stating, under the current version of Rule 4.4(A), that "the only issue is whether the exercise of jurisdiction . . . comports with federal due process").

a particular forum.  *Id.* at 414.  Specific jurisdiction may be based on relatively modest contacts with the forum if they have a substantial connection to the plaintiff's action.  See *Burger King*, 471 U.S. at 474-76; *RAR, Inc.*, 107 F.3d at 1277; *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1235 (Ind. 2000).

USSOG offers several contacts that it believes are sufficient to warrant personal jurisdiction over defendants in Indiana:  entering a multi-year business relationship with an Indiana corporation; communicating with an Indiana corporation in Indiana; providing services to Indiana residents; maintaining a website available to Indiana residents; and quoting an Indiana customer's tribute on that website.

Defendants' contacts with Indiana are obviously far too modest to support general jurisdiction.  See *Purdue Research*, 338 F.3d at 787 ("the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific jurisdiction"), quoting *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001); see also *Wilson v. Humphreys Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990) (acknowledging general jurisdiction as a fairly high standard in practice).  For general jurisdiction, contacts must be so extensive as to amount to a constructive presence in the state.  *Purdue Research*, 338 F.3d at 787 & n.16.  National Golf Schools provides golf instruction in several states, but Indiana is not one of those states.  It does not maintain property or offices in

Indiana, nor does it actively advertise here.  It has provided golf instruction to only five to ten Indiana residents in the last five years, thereby deriving only a small percentage of its revenue from Indiana customers.  See *Communications Depot, Inc. v. Verizon*, 2002 WL 1800044, *5 (S.D. Ind. July 18, 2002) (insubstantial revenue from defendant's sales to Indiana businesses did not amount to substantial, continuous, or systematic activity to satisfy general jurisdiction); cf. *Anthem*, 730 N.E.2d at 1239 (stating that percentage of nationwide business conducted in Indiana is not the "only" or "dominant" factor).

The fact that Indiana residents can access defendants' website to purchase golf equipment and apparel is insufficient to subject it to general jurisdiction in the state.  See *InfoSys Inc. v. Billingnetwork.com, Inc.*, 2003 WL 22012687, *4 (N.D. Ill. Aug. 27, 2003) ("there is no case where general jurisdiction was conferred on the basis of an interactive website in the absence of non-website factors evidencing intent for a defendant's product or website to reach a particular state"); see also *Jackson v. The California Newspapers Partnership*, 2005 WL 2850116, *2 (N.D. Ill. Oct. 27, 2005) ("mere maintenance of an Internet website is generally not sufficient to exercise general jurisdiction"); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 833 (N.D. Ill. 2000) (same).  And there is no evidence that Indiana residents comprise a sizeable percentage of National Golf Schools' website traffic or purchases.

Defendant Livingston's contacts with Indiana also fall far short of what is necessary to establish general jurisdiction. He does not own property in Indiana. Although he once worked in Indiana, he has never lived here. He has visited the state only a handful of times in the last ten years.

For specific jurisdiction in a case of this type, due process requires that a non-resident defendant must have established its contacts with the forum state by purposefully availing itself of the privilege of conducting business there. *Asahi Metal Industry Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 108-09 (1987); *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). In other words, a defendant's conduct and connection with the forum state should be such that it should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474.

At this stage, the precise nature of the parties' business relationship is still unclear. USSOG argues that it had an established, multi-year contractual relationship under which National Golf Schools provided golf instruction to USSOG customers on a subcontracting basis. National Golf Schools contends that it merely accepts referral customers and payment from USSOG at its offices

in Florida, and has happened to do so for each of the last few years.  It is unclear which party initiated the relationship or how its terms came about.

The limited evidence before the court is sufficient to support an inference of a regular course of dealing under a contract allocating revenue between the two sides.  In July 2004, Livingston e-mailed USSOG in Indiana with National Golf Schools' price list for golf packages for the upcoming golf season.  Most important, the e-mail included a statement of the terms of USSOG's referral discount.  See Pl. Ex. B (Part 4).  In October 2004, USSOG's Crum sent an e-mail to Livingston asserting that the fee for USSOG had been and needed to be a higher percentage than Livingston had indicated.  See Pl. Ex. B (Part 5).  These communications tend to show that the parties had established a continuing business relationship pursuant to a contract and that both expected future customer referrals from USSOG to National Golf Schools.  Livingston also testified that he and National Golf Schools generally communicated with USSOG in Indiana about eight to eleven times per year by e-mail, fax, or telephone concerning business.  The parties have had this level of contact since at least 2002.

The exercise of personal jurisdiction over these defendants is near the outer boundaries of due process, at least where the volume of business here was so modest in both absolute and relative terms.  But the evidence of the defendants' continuing business relationship with USSOG is nevertheless sufficient to establish a prima facie case of specific jurisdiction in a suit arising from that

relationship.  National Golf Schools' contacts with Indiana were purposeful rather than random or fortuitous, and gave it fair warning that it could be subject to suit in Indiana for disputes arising from those contacts.  See *Burger King*, 471 U.S. at473 ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."), quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950); *Purdue Research*, 338 F.3d at 785 (finding personal jurisdiction over defendant's predecessor to cooperative research agreement because the agreement clearly "envisioned continuing and wide-reaching contacts" between the parties), quoting *Burger King*, 471 U.S. at 480.

Further, USSOG alleges that defendants committed fraud, tortious interference, false advertising, and unfair competition.  The Seventh Circuit has held that a defendant alleged to have committed a tort is subject to personal jurisdiction in the state where the plaintiff experienced the injury.  See *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (in tortious interference suit, Illinois court could exercise jurisdiction over California defendant who made threatening telephone call to Illinois plaintiff's customer in New Jersey, causing injury in Illinois); see also *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (finding jurisdiction constitutional in state where libelous article, written by non-residents, was published); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 411-12 (7th Cir. 1994) (in trademark infringement suit, finding

jurisdiction proper in plaintiff's home state of Indiana though defendant planned
to operate football team in Maryland).  Here, USSOG alleges that its business has
been injured as a result of National Golf Schools' fraud and false advertising to its
referred customers.  Much like the plaintiff in *Janmark*, any loss USSOG may be
able to prove to its reputation or customer goodwill will have occurred in Indiana.[3]

In arguing against jurisdiction, defendants point out that they never once
visited USSOG in Indiana.  However, even without physical presence in a state,
wire and mail communication may establish minimum contacts, especially as part
of an interstate commercial contract.  See *Purdue Research*, 338 F.3d at 781 ("If,
for example, a commercial defendant's efforts are directed toward a particular
jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of
crucial importance."), citing *Calder*, 465 U.S. at 788-89, and *Burger King*, 471 U.S.
at 476; *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*,
906 F.2d 276, 283 (7th Cir. 1990) (observing defendant "created a relationship

---

[3]Judge Pallmeyer noted in *Clearclad Coatings, Inc. v. Xontal Ltd.*, 1999 WL
652030, *19-21 (N.D. Ill. Aug. 20, 1999), that some district courts have looked for
additional contacts with the forum state to approve jurisdiction under the
*Janmark* rule.  However, the similarity between the type of injury alleged in
*Janmark* and the injury alleged by USSOG weighs in favor of applying *Janmark*
here.  As in *Janmark*, the plaintiff's claims stem from defendants' contacts with
plaintiff's customers out of state.  The alleged business injury to the plaintiff is
indirect and therefore did not necessarily occur at the same location as
defendant's contact with customers.  The case for jurisdiction here is somewhat
stronger than in *Janmark* because the alleged wrongs stemmed from a
relationship that originated in Indiana, as USSOG referred the customers to
National Golf Schools and collected and sent payments in and from Indiana.
Moreover, because this case involves both contractual and tort claims, the court
need not rely solely on *Janmark* to support a finding that defendants are subject
to jurisdiction in Indiana.

which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction"); accord, *Burger King*, 471 U.S. at 476 ("a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted").

In deciding that defendants have sufficient contacts with Indiana to support specific jurisdiction in this case, the court does not rely on any contacts between National Golf Schools and Indiana residents through its website.  The Seventh Circuit held recently that the maintenance of a "passive" website does not subject a corporation to personal jurisdiction in a particular forum simply because the website can be accessed from there.  *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004).  In *Jennings*, the court characterized the defendant's website as passive because it provided only contact information and descriptions of its various product lines, but did not enable customers to order products online.  The court left open the question of "what level of 'interactivity' is sufficient to establish personal jurisdiction based on the operation of an interactive website." *Id.* at 549; see also, *e.g.*, *Edelson v. Ch'ien*, 352 F. Supp. 2d 861, 868-69 (N.D. Ill. 2005) (website posting press release with e-mail link to contact company was not sufficiently interactive to support specific jurisdiction in suit for tortious interference caused by press release); *Haggerty Enterprises, Inc. v. Lipan Indus. Co.*, 2001 WL 968592, *6 (N.D. Ill. Aug. 23, 2001) (website that listed no prices

and did not offer direct sales, but did allow users to contact defendant through its website for more information, did not support jurisdiction).

In this case, it is unclear how passive or interactive National Golf Schools' website is. Livingston testified that customers would at least have to "call through to complete the order" for on-line sales. See Livingston Dep. at 35. The mere availability of products and services to Indiana residents on an otherwise passive website does not support jurisdiction, at least where there is no evidence that Indiana residents are themselves purposefully targeted. See, *e.g.*, *Jackson*, 2005 WL 2850116, *5-6. The single testimonial by an Indiana customer, among many other testimonials by customers from all over the country, does not amount to purposeful targeting. Therefore, National Golf Schools' website does not itself constitute a purposeful availment of Indiana business sufficient to establish personal jurisdiction.

With respect to jurisdiction over Livingston, defendants have not put forth any evidence indicating that Livingston was not involved in the acts that have been found to constitute minimum contacts for National Golf Schools. Instead, the evidence and allegations before the court show that Livingston is an owner and head instructor in National Golf Schools, and that he has personally communicated with USSOG in Indiana by telephone, e-mail, and fax about their business relationship. Although it is generally true that the minimum contacts of a corporation cannot be imputed to an owner for purposes of establishing

jurisdiction, *Interlease Aviation Investors v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 908-09 (N.D. Ill. 2003), plaintiffs have alleged, and have supporting evidence, that Livingston personally engaged in the same Indiana contacts as the corporations.  Thus, he also had fair warning that he could be subject to suit in Indiana in a dispute arising from those contacts.[4]

Where sufficient contacts are present, defendants can escape jurisdiction only by making a compelling case that forcing them to litigate in the forum state would be so unreasonable as to violate traditional notions of fair play and

---

[4]Although Livingston does not explicitly invoke it, the court is aware of the equitable "fiduciary shield" doctrine which can prohibit a state's exercise of personal jurisdiction over an individual if the only bases for jurisdiction are actions taken on behalf of an employer or other principal.  In 1993, Judge McKinney observed that many courts had rejected that doctrine, reasoning that the Supreme Court's decision in *Calder v. Jones* implicitly rejected the doctrine as a requirement of federal due process.  See *Intermatic, Inc. v. Taymac Corp.*, 815 F. Supp. 290, 293-96 (S.D. Ind. 1993).  Judge McKinney also noted that the Indiana Supreme Court had not yet addressed whether the doctrine was required by the state's long-arm statute.  *Id.* at 294.  He noted that the Indiana Court of Appeals had applied the doctrine in *Ryan v. Chayes Virginia, Inc.*, 553 N.E.2d 1237, 1239 (Ind. App. 1990), but he determined that the Indiana Supreme Court would not likely follow that decision because of the doctrine's flaws, unworkability, and potential conflict with the understanding that Indiana's long-arm statute extended personal jurisdiction to the full limits of federal due process.  *Intermatic*, 815 F. Supp. at 296; cf. *Rollins v. Ellwood*, 565 N.E.2d 1302, 1313-18 (Ill. 1990) (adopting fiduciary shield doctrine as a matter of Illinois constitutional due process and Illinois long-arm statute).

Since *Intermatic*, the Indiana long-arm statute has once again been extended to the constitutional limits.  See *supra* note 2.  In addition, since 1993, neither the Indiana Supreme Court nor the Court of Appeals has applied the fiduciary shield doctrine in any published decisions.  The court therefore agrees with Judge McKinney that *Ryan* is not persuasive on this point.  See also *Health Mgmt. Professionals Inc. v. Diversified Business Enterprises, Inc.*, 882 F. Supp. 795, 799 (S.D. Ind. 1995) (Barker, J.) (citing *Intermatic* in refusing to apply fiduciary shield doctrine to insulate defendant corporate officer from personal jurisdiction).

substantial justice.  *Burger King*, 471 U.S. at 477; *Logan Productions*, 103 F.3d at 53.  In making this determination, courts are to consider (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining the most efficient resolution of the controversies; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Burger King*, 471 U.S. at 466-67.

Defendants have not submitted any evidence demonstrating that forcing them to litigate in this judicial district would violate traditional notions of fair play and substantial justice.  Though it is always somewhat burdensome to defend a lawsuit away from one's home state, it is not a burden that violates due process in this instance.  See *Burger King*, 471 U.S. at 474 (explaining that modern transportation and communications mean it is usually not unfair or too burdensome to require a party to defend itself in a state where it engages in economic activity); *Logan Productions*, 103 F.3d at 54; see also *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

Moreover, the plaintiff, an Indiana corporation, has an interest in obtaining convenient and effective relief.  See *Burger King*, 471 U.S. at 482-83.  And Indiana has an interest in adjudicating a dispute involving the treatment of an Indiana corporation and its Indiana customers.  See *Anthem*, 730 N.E.2d at 1240 ("Indiana has an interest in seeing its residents and corporations protected from fraud."). In light of the substantial connection between USSOG's claim and defendants' purposeful contacts with this forum, and the absence of a showing of prejudice to defendants in appearing here, the exercise of personal jurisdiction is proper in this judicial district.

II.    *Venue*

The defendants have also moved to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Because neither side has requested an evidentiary hearing on the facts relevant to venue, the court accepts USSOG's unchallenged allegations and evidence as true.  See *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001).

USSOG claims that venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).  Section 1391(b) governs venue in federal question cases, which may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Section 1391(c) states that a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  Because National Golf Schools is subject to personal jurisdiction in Indiana in this action, it is regarded as residing in this district under § 1391(c).  Livingston, however, resides only in Florida.  Because not all defendants reside in Indiana, venue is not proper in this judicial district under § 1391(b)(1).

The basis for venue in this district is § 1391(b)(2), which allows venue here if "a substantial part of the events or omissions giving rise to the claim" occurred in Indiana. This rule, like its parallel provision for diversity jurisdiction cases in § 1391(a)(2), does not require that the majority of events giving rise to the claim occurred in the forum district, but only that a substantial part of the events took place there. *Eli Lilly & Co. v. Crabtree*, 2004 WL 828247, *8 (S.D. Ind. Mar. 19, 2004) (concluding that "the rule does not require a venue to be the location of the 'most substantial' or even the 'more substantial' part of the events"); see also *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). Accordingly, venue under § 1391(b)(2) may be proper in more than one judicial district. *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998); *Enviroplan, Inc. v. Western Farmers Electric Cooperative*, 900 F. Supp. 1055, 1062 (S.D. Ind. 1995). To consider events "substantial" under the statute, it is sufficient to establish that events occurring in the forum district were part of the "historical predicate" of the claim. See *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002).

Under this standard, venue is proper in this judicial district. USSOG's basic complaint is that defendants accepted referrals and payments from USSOG for golf instruction and failed to fulfill those reservations. USSOG alleges that defendants' actions breached the parties' interstate contract and amounted to tortious conduct, requiring USSOG to refund payments in Indiana and otherwise injuring its business in Indiana.

Defendants present the same arguments against venue as against personal jurisdiction. They contend that venue is proper only in Florida because most of the communications between the parties were from Indiana to Florida and that National Golf Schools' business and website are run out of Florida.

A proper venue inquiry looks not to the defendant's contacts with the forum, but rather to the location of the events giving rise to the cause of action. See *Master Tech Products*, 181 F. Supp. 2d at 914. The events giving rise to this case include defendants' acceptance of USSOG's referrals from Indiana and the alleged business injury to USSOG in Indiana. Cf. *Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co., Inc.*, 2005 WL 1983846, *7 (N.D. Ind. Aug. 11, 2005) (finding venue proper in plaintiff's home state for fraud claim because plaintiff's reliance and detrimental effects of reliance occurred there). Thus, a substantial part of the events giving rise to this action occurred in Indiana, and venue is proper in this district.

III.   *Livingston's Rule 12(b)(6) Motion*

Defendant Livingston has moved to dismiss the claims against him for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The court may dismiss a claim under Rule 12(b)(6) only where it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467

U.S. 69, 73 (1984) (reversing dismissal); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (reversing dismissal).  In deciding such a motion, the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in a light most favorable to the plaintiff. *Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000).  Under the liberal notice pleading standard in federal civil actions, a plaintiff need not allege facts or legal theories, but may describe its claim briefly and simply.  *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (reversing dismissal).  A plaintiff is entitled to the benefit not only of its allegations, but of any other facts it might assert that are not inconsistent with its allegations.  Thus, in responding to a motion to dismiss, a plaintiff may assert new facts in its brief.  So long as they are not inconsistent with the complaint, the court must assume they are true for purposes of deciding the motion.  See, *e.g.*, *Forseth*, 199 F.3d at 368 (reversing in part a dismissal on the pleadings); *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990) (reversing dismissal).

Livingston is generally correct that he cannot be held liable for the alleged wrongful acts of a corporation of which he is either an officer or owner, absent some allegations of individual wrongdoing.  However, USSOG's amended complaint is sufficient to allege individual wrongdoing.

USSOG names Livingston as a party, both individually and in his capacity as Chief Executive Officer of National Golf Schools.  Throughout its complaint, USSOG refers to acts committed by "Defendants" in the plural.  USSOG's response brief states that Livingston "personally committed the acts at issue." See Pl. Resp. Br. at 11.  Construing USSOG's allegations liberally, as the court must at this stage, the complaint sufficiently alleges that Livingston was personally involved in the various acts giving rise to USSOG's claims.  See *Palmer v. Board of Education of Comm. Unit School Dist.*, 46 F.3d 682, 688 (7th Cir. 1995) (reversing dismissal as to individual defendants where complaint only pled facts as to collective conduct); accord, *State Civil Rights Comm'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050-51 (Ind. 2000) (reversing dismissal of individual defendant not specifically mentioned in body of complaint where complaint alleged actions by "defendants").  The question is whether personal involvement could expose Livingston to liability under any facts on any count in the complaint.

USSOG's amended complaint includes six counts:  false advertising in violation of the Lanham Act, common law unfair competition, breach of contract, tortious interference, unjust enrichment, and fraud.  No set of facts could support a breach of contract claim against Livingston in his personal capacity.  USSOG entered into a contract, if any, with National Golf Schools.  Under Indiana law, corporate officers and shareholders are generally not liable for the contractual obligations of the corporation, because only the corporation has agreed to perform the obligations of the agreement.  See *Winkler v. V.G. Reed & Sons, Inc.*,

638 N.E.2d 1228, 1231 (Ind. 1994).  While there are exceptions to this general rule, permitting courts to pierce the proverbial corporate veil where the corporate form is ignored or manipulated or is used to carry out a fraud, see *id.*, USSOG has not tried to argue that any exception might apply here.

The remaining counts are best characterized as actions in tort.  Livingston could be held jointly liable under USSOG's federal false advertising claim.  See 15 U.S.C. § 1125(a)(1) (creating liability under Lanham Act for "any person" who "uses in commerce" false or misleading facts); *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1428-33 (3d Cir. 1994) (noting that the Lanham Act "federalizes a common law tort" and applying basic agency principles in determining alleged principal's liability under §1125(a) for actions of agents with apparent authority).

With respect to USSOG's state tort claims, the Indiana  Supreme Court has stated:  "It is true that an officer of a corporation is generally not personally liable for the torts of the corporation or other officers or agents merely because of her office.  However, an officer is personally liable for the torts in which she has participated or which she has authorized or directed." *State Civil Rights Comm'n*, 738 N.E.2d at1050 (internal citations omitted) (reversing dismissal of claims that individual defendants participated in illegal discrimination); see also *McDonald v. Smart Prof. Photo Copy Corp.*, 664 N.E.2d 761, 764 (Ind. App. 1996) ("An agent who fraudulently represents, uses duress, or knowingly assists in the commission

of fraud or duress by his principal is subject to liability in tort to any injured third

party."). USSOG's complaint sufficiently alleges that Livingston either participated

in, authorized, or directed the acts that give rise to its tort claims. These

allegations are sufficient to defeat Livingston's Rule 12(b)(6) motion to dismiss on

the remaining counts.[5]


Accordingly, defendants' motion to dismiss is denied in all respects, except

that the breach of contract claim is dismissed as against Livingston.


So ordered.

Date: November 10, 2005

*David F Hamilton*
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

---

[5]USSOG's unjust enrichment count seeks an equitable remedy that cannot be characterized readily as either contract or tort. To prevail on a claim of unjust enrichment under Indiana law, "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991). This remedy is quasi-contractual and is available only when there is no contract in the true sense. *Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. App. 2005).

It is not clear to the court that there are no factual scenarios in which USSOG could prove such a claim against Livingston personally. The Seventh Circuit has repeatedly cautioned district judges not to be too quick to grant dismissals based on pleadings. *E.g.*, *Scott v. City of Chicago*, 195 F.3d 950, 951-52 (7th Cir. 1999) (reversing dismissal); *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998) (reversing in part dismissal and noting that defendant's and district court's "entire argument strays rather far afield from the minimal requirements of federal notice pleading"); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995) (reversing dismissal). In addition, Livingston offers no argument specific to this count, so it also survives dismissal at this stage.

Copies to:

John R. Maley
BARNES & THORNBURG
jmaley@btlaw.com

Mary Jane Frisby
BARNES & THORNBURG
mfrisby@btlaw.com

Garret Bancker Hannegan
MORGAN & POTTINGER
gbh@morganandpottinger.com